UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHELLE K. MACHOWSKI, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:19-CV-350-JPK |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed on September 18, 2019, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13]. Plaintiff requests that the June 2019 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for an award of benefits or further proceedings. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 14], and Plaintiff filed a Reply to Defendant's Response [DE 17]. For the following reasons, the Court remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

On March 25, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability beginning December 7, 2011, due to extreme pain, degenerative disc disease, multiple cervical fusions, headaches, anxiety, arthritis, gastrointestinal reflux disease (GERD), and bladder conditions. (AR 19, 203).[1] The application was denied initially and on reconsideration (AR 87-114), after which Plaintiff requested a hearing which was held before an Administrative Law Judge

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

on August 19, 2015. (AR 42, 128-29). Following an unfavorable hearing decision on September 25, 2015 (AR 19-36), and the Appeals Council's denial of review on November 21, 2016 (AR 1-3), Plaintiff appealed to the Federal District Court in the Northern District of Illinois. (AR 1194-95). Pursuant to an agreed motion, that court remanded Plaintiff's case for further proceedings in the agency on November 8, 2017. (AR 1198-1201). A new hearing was then held before a different Administrative Law Judge (ALJ) on December 12, 2018. (AR 1077-1150). On June 18, 2019, this ALJ issued a partially favorable decision, making the following findings:[2]

> 1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since December 7, 2011, the date the claimant became disabled.
>
> 3. From December 7, 2011 through January 28, 2014, the period during which the claimant was under a disability, the claimant had the following severe impairments: laminectomy syndrome secondary to cervical laminectomy; multilevel degenerative disc disease, cervical spine; and spondylosis, cervical spine.
>
> 4. From December 7, 2011 through January 28, 2014, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [F]rom December 7, 2011 through January 28, 2014, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with additional non-exertional limitations. The claimant could:
> - Occasionally lift a maximum of 10 pounds;
> - Frequently lift and/or carry less than 10 pounds;
> - Walk and/or stand for about 2 hours total out of an 8-hour workday;
> - Sit for about 6 hours out of an 8-hour workday; and
> - Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying.

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

Additionally, the claimant is capable of applying commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. She can deal with problems involving several concrete variables in or from standardized situations. She can add, subtract, multiply, and divide all units of measure, with like common and decimal fractions. She can compute ratio, rate, and percent. She can draw and interpret bar graphs, and can perform arithmetic calculations involving all American money units. She can read a variety of novels, magazines, atlases, and encyclopedias. She can read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

However, even with these limitations, during the period from December 7, 2011 through January 28, 2014, taking into consideration the time necessary for post-surgical recovery and rehabilitation, as well [as] the claimant's pain complaints, the claimant could not have sustained the requirements of full-time employment.

6.  From December 7, 2011 through January 28, 2014, the claimant was unable to perform any past relevant work.

7.  The claimant was a younger individual age 18-44, on the established disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. From December 7, 2011 through January 28, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was under a disability, as defined by the Social security Act, from December 7, 2011 through January 28, 2014.

12. The claimant has not developed any new impairment or impairments since January 29, 2014, the date the claimant's disability ended. Thus, the claimant's current severe impairment is the same as that present from December 7, 2011 through January 28, 2014.

13. Beginning January 29, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

14. Medical improvement occurred as of January 29, 2014, the date the claimant's disability ended.

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity.

16. [B]eginning January 29, 2014, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with additional non-exertional limitations. The claimant can:
   - Occasionally lift a maximum of 10 pounds;
   - Frequently lift and/or carry less than 10 pounds;
   - Walk and/or stand for about 2 hours total out of an 8-hour workday;
   - Sit for about 6 hours out of an 8-hour workday; and
   - Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying.

Additionally, the claimant is capable of applying commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. She can deal with problems involving several concrete variables in or from standardized situations. She can add, subtract, multiply, and divide all units of measure, with like common and decimal fractions. She can compute ratio, rate, and percent. She can draw and interpret bar graphs, and can perform arithmetic calculations involving all American monetary units. She can read a variety of novels, magazines, atlases, and encyclopedias. She can read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

17. Beginning January 29, 2014, the claimant has been capable of performing past relevant work as [a] hospital administration clerk. This work does not require the performance of work-related activities precluded by the claimant's current residual functional capacity.

18. The Claimant's disability ended January 29, 2014, and the claimant has not become disabled again since that date.

(AR 1045-68).

4

On September 18, 2019, Plaintiff filed this civil action seeking review of the ALJ's June 2018 decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The parties thereafter filed forms consenting to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. (ECF No. 10). This Court therefore has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). At a minimum, an ALJ must articulate his analysis of the evidence to allow the reviewing court to trace the path of his reasoning and be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record, and "must build an accurate

and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff asserts three grounds for reversal of the ALJ's June 2019 decision. She contends the ALJ: (1) did not adequately support his finding that Plaintiff experienced medical improvement as of January 29, 2014; (2) did not properly evaluate her RFC; and (3) incorrectly assessed her subjective allegations. (P's Brief 4-23, ECF No. 13). The Court addresses each argument in turn.

**I.   Medical Improvement**

Among other impairments, Plaintiff's medical record shows a history of problems with her cervical spine for which she underwent four surgeries: an attempted cervical fusion at C3-4 and C4-5 in March 2003, which was redone in December 2004, followed by an attempted fusion at C6-7 in March 2010, which was also redone in December 2011. (AR 1052-53, 1941). Given this surgical history, the ALJ found Plaintiff limited to sedentary work with certain non-exertional limitations from December 7, 2011 through January 28, 2014, and that she still "could not have sustained the requirements of full-time employment," when "taking into consideration the time necessary for post-surgical recovery and rehabilitation, as well [as] the claimant's pain complaints." (AR 1054-55). As of January 29, 2014, however, the ALJ found that Plaintiff experienced medical improvement sufficient to allow full-time sedentary work with the same non-exertional limitations. (AR 1058-59). Plaintiff asserts two errors in this determination: failure to address additional physical limitations included in the medical opinions relied upon to find improvement, and failure to address Plaintiff's continuing pain after her supposed improvement. (P's Brief at 4-10, ECF No. 13). The Court agrees that remand is required on both issues.

**A.   The ALJ's Reliance on the Opinions of Drs. Sergent and Berezovski**

Plaintiff first argues that the ALJ based his medical improvement determination on the opinions of chiropractor Dr. Jeffrey Sergent and physician Dr. Roman Berezovski, but "omitted

significant restrictions opined to by those doctors, including sitting, grasping, and manipulative limitations, from the medical improvement analysis and RFC assessment." (P's Brief at 4-5, ECF No. 13). According to Plaintiff, this error was not harmless, "for if the ALJ had properly incorporated all limitations opined to by the medical opinions the ALJ gave significant weight to (AR 1066), the ALJ likely would have found that Ms. Machowski was in fact more limited after January 29, 2014 by virtue of the myriad additional limitations opined to by Drs. Sergent and Berezovski." (P's Brief at 9, ECF No. 13). Specifically, Plaintiff contends, "she would have been limited to sitting occasionally (or, for 1/3 of the workday) with highly limited postural and manipulative abilities" (including no simple grasping on the left; no firm grasping, fine manipulation, or keyboarding bilaterally; negligible reaching above shoulder level; and no looking down for more than 15 minutes), all of which "suggest a more diminished RFC than the ALJ found during the closed period of disability." (*Id*. at 2, 4-5, 9-10, ECF No. 13 (citing AR 999-1001, 1021-23)).

The Commissioner does not dispute that Drs. Sergent and Berezovski included such additional limitations in their opinions. (D's Mem. at 11, ECF No. 14). Both sides also agree that the ALJ placed "significant weight" on the opinions of these two physicians when determining that Plaintiff's condition had improved sufficiently to allow full-time sedentary work, and that a determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with a claimant's impairments." (P's Brief at 5, 9, ECF No. 13 (citing 20 C.F.R. § 404.1594(b)(1)); D's Mem. at 3, 10, ECF No. 14 (same)). Yet the Commissioner defends the ALJ's failure to address the additional sitting, reaching, grasping, and manipulative limitations opined by Drs. Sergent and Berezovski because "(whether the ALJ 'ignored' them or not), both doctors ultimately opined that Plaintiff was capable of

8

sedentary work, even with the limitations to which Plaintiff refers." (D's Mem. at 11, ECF No. 14). But this argument fails to explain (as does the ALJ's decision) how the ALJ found medical improvement compared to Plaintiff's prior RFC during the period of closed disability based on two medical opinions that endorsed additional physical limitations omitted from that prior RFC. And while the ALJ can certainly accept part of a physician's opinion and properly reject other parts of that same opinion, the ALJ here did not even address the parts of either physician's opinion that would have limited the RFC. This was not only impermissible "cherry picking" of evidence that supported the ALJ's conclusion while ignoring evidence that could undercut that conclusion, it also failed to draw a logical bridge to support the ALJ's decision in the event he actually considered that evidence and simply failed to offer reasons for rejecting it. *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (ALJ improperly credited statements in medical opinion "that support[ed] a finding of non-disability" but "ignored others making plain that [claimant] had serious neck and back problems"); *Beardsley*, 758 F.3d at 837 (ALJ "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings.").[3]

The ALJ's significant reliance on the opinions of Drs. Sergent and Berezovski warrants further explanation in other respects as well. While both physicians indicated some capacity for sedentary activity (under "Restrictions and Limitations"), neither stated an ability for full-time

---

[3] Lacking such explanation in the decision, the Commissioner notes that the ALJ rejected Plaintiff's claims of handgrip weakness based on a May 2014 examination indicating symmetric 4/5 strength at the bilateral deltoids, triceps, and finger extensors, and 5/5 strength at the bilateral biceps and finger flexors. (D's Mem. at 22, ECF No. 14 (citing AR 994, 1062)). But while the ALJ may have intended to reject the manipulative limitations endorsed by Drs. Sergent and Berezovski for this reason – along with similar manipulative limitations endorsed by the medical expert (Dr. Allan Levine) of only frequent handling and fingering, occasional overhead reaching, and no forceful grasping (AR 1948) – the decision does not say that, and the Court's review "is confined to the rationales offered by the ALJ." *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012). Nor would such reliance on Plaintiff's hand strength measurements address her chiropractor's explanation that Plaintiff had good initial upper extremity strength, but pain would cause her to become weak and stop. (AR 664).

9

sedentary work, and in fact, both stated that Plaintiff was capable of sitting only "occasionally" (AR 1000-01, 1022-23), which agency regulations define as "very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." *See Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020) (quoting SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996)). Neither the ALJ nor the Commissioner have explained how such a tolerance for occasional sitting supports the ALJ's determination that Plaintiff can sit "for about six hours out of an 8-hour workday." (AR 1058). *See also* SSR 96-9p, 1996 WL 374185, at *3 (sedentary work "would generally total about 6 hours out of an 8-hour workday" of sitting). Nor do the ALJ's decision or Commissioner explain how the opinions of Drs. Sergent and Berezovski demonstrate any other substantial improvement as of January 29, 2014, when both physicians had treatment relationships with Plaintiff that spanned back to her earlier period of disability (Dr. Sergent from April 2012, and Dr. Berezovski from November 2013), and both indicated that Plaintiff's condition was "unchanged" and "ongoing" or "possibly permanent" as of January 28, 2014, or later. (AR 253, 641-43, 1000-01, 1021-23).

For these reasons, the Court agrees with Plaintiff that remand is required for reconsideration and a clearer explanation of the ALJ's determination of medical improvement as of January 29, 2014, particularly in light of the additional aspects of the opinions of Drs. Sergent and Berezovski discussed above which the ALJ's June 2019 decision failed to address. *See Mulligan v. Astrue*, 336 F. App'x 571, 577 (7th Cir. 2009) (remanding for reconsideration of medical improvement determination where medical opinion regarding ability to work relied upon was "more equivocal" than ALJ suggested). While this evidence may not be sufficient to require a finding of disability or even a different date of medical improvement, it is necessary for the ALJ to address any additional limitations recommended by Drs. Sergent and Berezovski that were

not included in Plaintiff's past or present RFC, and any other evidence related to those limitations, and explain whether and why that evidence indicates any improvement (or lack thereof), as compared to Plaintiff's condition during the closed period of disability. *See* D's Mem. at 4-5, ECF No. 13 ("When, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which he finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date.") (citing *Lymperopulos v. Astrue,* No. 09 C 1388, 2010 WL 960340, at *7 (N.D. Ill. March 10, 2010)); *see also Koslow ex rel. Koslow v. Astrue*, No. 2:08-cv-159, 2009 WL 1457003, at *11 (N. D. Ind. May 22, 2009) (same).

### B. Plaintiff's Continuing Pain After The January 2014 Improvement Date

Plaintiff's second challenge to the ALJ's medical improvement determination questions the difference between the RFC determined for her period of disability and the RFC determined as of January 29, 2014. As noted above, for the period of disability, the ALJ found Plaintiff "could not have sustained the requirements of full-time employment," when "taking into consideration the time necessary for post-surgical recovery and rehabilitation, as well [as] the claimant's pain complaints," but this limitation was omitted from her RFC after January 2014. (AR 1055, 1058-59). Plaintiff argues the ALJ "acknowledged throughout the decision that [Plaintiff] suffered pain after January 29, 2014," but "did not explain why [her] pain complaints, which are consistently documented in the record both before and after January 2014, reflected medical improvement to the extent that she could work after that date but not prior to it." (P's Brief at 6, ECF No. 13).

The Commissioner similarly acknowledges that Plaintiff continued to complain of neck pain after the determined medical improvement date of January 29, 2014, including complaints of 10/10 neck pain in March 2014 (AR 984); moderate neck, arm, and shoulder pain for which opiates

11

were prescribed in May 2014 (AR 991, 993-94); constant neck, back, and arm pain in March and April 2015 (AR 702-03, 707-11); back, neck, and head pain reported to an emergency room following a slip and fall down some stairs in December 2015 (AR 1433); and continuing neck/cervical pain with reduced range of motion during an office visit two days later (AR 1644-47). (D's Mem. at 5-7, ECF No. 14). But the Commissioner argues the ALJ considered this evidence and discounted these pain complaints for varying reasons, such as due to injury, the unusual activity and stress of packing for a move, or alleviated by therapy or exacerbated by a failure to follow through with therapy. (*Id*. (citing AR 1059-61, 1064, 1067)). Thus, according to the Commissioner, the ALJ reasonably assessed this evidence, and this Court may not reweigh it. (*Id*. at 5). But as the Commissioner also acknowledges, the ALJ's determination that Plaintiff's rehabilitation and pain complaints improved sufficiently to allow full-time sedentary work by late January 2014 was grounded not only in his assessment of this evidence.

Rather, as the Commissioner recognizes, the ALJ acknowledged that Plaintiff "continued to seek treatment for pain after January 28, 2014," but relied on a statement from Dr. Sergent on that date to conclude that "Plaintiff was capable of performing sedentary exertional work." (*Id*. at 4-5 (citing AR 999-1001, 1058)). And while the ALJ further noted the opinion of another chiropractor (Dr. Thompson) that she "would probably need ongoing chiropractic treatment due to lack of cervical motion, and that she would probably never be pain free," the ALJ "stated that the limitations of sedentary work accommodated for the stress that more frequent walking and/or standing would impose on Plaintiff's neck and back." (*Id*. at 6-7 (citing AR 702, 1064, 1067)). The Court has explained the shortcomings of these findings, specifically that Dr. Sergent's opinion included additional limitations that the ALJ failed to address, including a sitting limitation that may have impeded Plaintiff's ability to perform full-time sedentary work. *See supra* Part A. Drs.

12

Sergent and Berezovsky also opined that Plaintiff's condition was unchanged, she continued to experience pain (moderate to severe pain, according to Dr. Berezovsky), reduction of pain was a continuing goal, and her symptoms were ongoing, if not permanent. (AR 999-1001, 1021-23).

Thus, while the ALJ was certainly permitted to assess Plaintiff's ongoing pain complaints to the extent supported by substantial evidence, the determination that those complaints and her post-surgical recovery and rehabilitation had improved sufficiently for full-time sedentary work also relied on medical opinions that the ALJ failed to consider in important respects. The Court therefore agrees with Plaintiff that remand is required for reconsideration of that determination in light of Plaintiff's full medical record, including the complete opinions of Drs. Sergent and Berezovsky. But again, this is not to say that these opinions require a finding of disability or a different medical improvement date, only that such determinations must also address the portions of these opinions that contain contrary information. *See Mulligan*, 336 F. App'x at 577.

## II.     The ALJ's RFC Determination

Plaintiff next challenges the ALJ's physical and mental RFC determinations and the absence of any RFC limitations to accommodate Plaintiff's alleged need for multiple bathroom breaks. (P's Brief at 10-18, ECF No. 13). For the following reasons, the Court agrees with the first two arguments, and partly agrees with the third.

### A.     Plaintiff's Physical RFC

Regarding Plaintiff's physical RFC, the Court agrees that, along with their potential impact on the issue of medical improvement, the additional limitations discussed in the opinions of Drs. Sergent and Berezovsky must be considered also in relation to Plaintiff's physical RFC. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("RFC assessment must incorporate all of the limitations supported by the medical record" (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th

Cir. 2015)). Remand is therefore required to reconsider Plaintiff's physical RFC in light of all additional limitations discussed in those opinions – including relating to sitting, grasping, handling and fingering, reaching, looking down, and any additional postural limitations (AR 999-1001, 1021-23) – and their impact (if any) on Plaintiff's ability to perform her past relevant work or other sedentary work. To the extent the ALJ concludes these limitations do not require accommodation in Plaintiff's RFC, he must explain why other parts of Drs. Sergent's and Berezovsky's opinions were relied upon while these limitations, suggested by the very same physicians, were rejected. And to the extent Plaintiff's RFC is modified to accommodate any such limitations, the ALJ must also apprise any vocational expert relied upon of such modifications. *See Crump*, 932 F.3d at 570 ("the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform" (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

### B. Plaintiff's Alleged Need for Multiple Bathroom Breaks

Plaintiff next argues that her RFC requires accommodation for her alleged bathroom needs throughout the workday due to her chronic interstitial cystitis, which causes urinary frequency and urgency. (P's Brief at 11-12, ECF No. 13). The Commissioner counters that the ALJ considered this condition, and "noted that the record did not clearly show that Plaintiff sought any treatment for this problem, and symptoms of bladder urgency or increased frequency [in] urination were not documented." (D's Mem. at 13-14, ECF No. 14 (citing AR 1048)). Thus, according to the Commissioner, "the ALJ properly determined that Plaintiff's bladder impairment was not a severe impairment, and properly did not include such limitations in the RFC." (*Id.*). But the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Stage v. Colvin*, 812

F.3d 1121, 1125 (7th Cir. 2016) (quoting *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). And while the ALJ found Plaintiff's interstitial cystitis to be non-severe, he nevertheless acknowledged it was "a chronic problem that can come and go." (AR 1063). Thus, regardless of whether the impairment was severe, the ALJ was obliged to consider any limitations related to Plaintiff's interstitial cystitis in the RFC analysis.

The ALJ's observation that Plaintiff did not seek "treatment for this problem specifically" apart from her other impairments (AR 1063) does not alter this conclusion. For one thing, several medical records indicate her complaints of urinary frequency or urgency (AR 412, 621, 878, 1679), and Plaintiff testified that these issues sometimes caused her to require bathroom breaks up to every two hours or even more frequently. (AR 1124-25). While this evidence may not necessarily require an accommodation in Plaintiff's RFC, the ALJ should have explained whether and why he rejected it and made a clear finding based on substantial evidence as to how frequently Plaintiff would require bathroom breaks during the workday. *See Loxton v. Saul*, 1:19-cv-484, 2020 WL 6194112, at *3 (N.D. Ind. Oct. 22, 2020) ("that Plaintiff sought limited treatment" did not "call into question Plaintiff's undisputed testimony regarding her restroom needs" or "diminish the need for restroom breaks in the RFC").[4] Particularly in light of the vocational expert's testimony that additional and/or unscheduled bathroom breaks could limit the jobs Plaintiff is able to perform (AR 1144-47), remand is required for this reason as well. *See Seals v. Berryhill*, No. 16-cv-1975, 2017 WL 2416293, at *5 (S.D. Ind. Jun. 5, 2017) (remanding where ALJ failed to confront evidence regarding claimant's urinary frequency, given vocational expert testimony that being off-task more than 20%, or bathroom needs five minutes per hour, might prevent employment).

---

[4] *See also Katherine B. v. Saul*, No. 2:19-cv-257, 2020 WL 2786832, at *2 (N.D. Ind. May 29, 2020) ("The Seventh Circuit has held that an ALJ is in error where she fails to make a finding regarding the required length or frequency of bathroom breaks in cases where that may affect the claimant's ability to maintain full time work.") (citing *Sikorski v. Berryhill*, 690 F. App'x 429, 433 (7th Cir. 2017)).

### C. Plaintiff's Mental RFC

Plaintiff's third RFC challenge complains that the ALJ found Plaintiff "had mild limitations in understanding, remembering, or applying information and mild limitations in concentrating, persisting, or maintaining pace," but the ALJ "did not explain how Ms. Machowski's mild concentration difficulties actually limited her ability to function in the workplace," and "the mental limitations in the RFC . . . were insufficient to account for Ms. Machowski's mild concentration difficulties." (P's Brief at 13-15, ECF No. 13). According to Plaintiff, "an ALJ errs by finding that a non-severe impairment produces mild concentration restrictions but then omits any associated functional limitations from the RFC assessment." (*Id*. at 14). And this asserted error was not harmless, Plaintiff argues, because "the vocational expert testified that a restriction to simple, routine tasks would preclude the performance of Ms. Machowski's past relevant work," and the ALJ's decision "does not contain an alternative Step Five finding regarding other jobs Ms. Machowski could perform." (*Id*. at 17 (citing AR 1067-68, 1141-42)). The Court agrees only in part.

As the Commissioner persuasively argues, the ALJ identified substantial evidence to support and explain his findings that Plaintiff's mental impairments are non-severe and cause only minimal concentration difficulties. (D's Mem. at 17, ECF No. 14). As the Commissioner notes, among other evidence, the ALJ cited Plaintiff's abilities to handle money, drive, and attend doctor's appointments on her own, along with her apparent ability to participate and maintain concentration during the administrative hearing. (*Id*. at 16-20 (citing AR 236-38, 1051, 1064-65)). Contrary to Plaintiff's arguments, these were substantial reasons for the ALJ to find that Plaintiff has only mild concentration limitations. *See*, *e.g.*, *Delong v. Saul*, -- F. App'x --, 2021 WL 387511, at *5 (7th Cir. Feb. 3, 2021) (unimpaired attention and concentration during routine medical

16

appointments and ability to drive son to school supported rejection of prior ALJ's finding of moderate concentration limitations and supported finding of mild concentration limitations).[5] That said, even mild concentration limitations can warrant one or more accommodative RFC limitations. *See Hall v. Saul*, No. 3:19-cv-354, 2020 WL 2507932, at *4 (N.D. Ind. May 15, 2020) ("It may well be that Hall's mild CCP limitation would not impact her functional ability to work as an accountant. But if that is the case, the ALJ needed to say so. A reviewing court should not be left to guess."). Thus, having found mild mental limitations, the ALJ was obliged to accommodate them in Plaintiff's RFC or "satisfactorily explain why they were not included." *Gajewski v. Saul*, No. 2:19-cv-185, 2020 WL 4932538, at *3 (N.D. Ind. Aug 24, 2020).

Here, while the ALJ expressly found that Plaintiff required no limitation to simple work (AR 1064), the decision fails to make clear whether any other accommodations of Plaintiff's mild mental limitations (such as breaks during the day or limited hours of sustained concentration, as in *Delong*) were required. *See* 2021 WL 387511, at *5. Instead, the ALJ included several cognitive functions in the RFC, including abilities to: (1) apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form"; (2) "deal with problems involving several concrete variables in or from standardized situations"; (3) "add, subtract, multiply, and divide all units of measure, with like common and decimal fractions"; (4) "compute ratio, rate, and percent;" (5) "draw and interpret bar graphs"; (6) "perform arithmetic calculations involving all American monetary units"; (7) "read a variety of novels, magazines, atlases, and encyclopedias"; and (8) "read safety rules, instructions in the use and maintenance of shop tools and equipment,

---

[5] *See also Carter v. Colvin*, 556 F. App'x 523, 526 (7th Cir. 2014) (ALJ properly considered that claimant "was able to participate in the hearing closely and fully without being distracted" when assessing concentration limitations); *Yerk v. Colvin*, No. 14-C-1216, 2015 WL 1966722, at *11 (E.D. Wis. May 1, 2015) (ALJ properly considered claimant's abilities to drive and manage money, and that "he exhibited no problems with concentration or pace during the consultative exam and appeared to have no difficulties following along at the hearing," when finding mild concentration limitations).

17

and methods and procedures in mechanical drawing and layout work." (AR 1059, 1064-65). While the Court acknowledges Plaintiff's function report admitting she can read, manage money, pay bills, count change, handle a savings account, and use a checkbook/money order (AR 219-20), the ALJ neither identified support for the additional cognitive functions recited in the RFC nor explained his reasons for thinking Plaintiff capable of them. And while the standard of review applicable here is deferential, the Court "will not 'scour the record for supportive evidence.'" *Noonan*, 835 F. App'x at 880 (quoting *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)).

Accordingly, the Court agrees that remand is required also for reconsideration of Plaintiff's mental RFC, identification of the record support for the cognitive functions recited in the RFC, and a clearer explanation of whether and why any additional mental limitations are (or are not) required, including a restriction to simple and routine tasks and/or any other accommodations of Plaintiff's mild mental limitations. And again, to the extent any additional mental RFC limitations are included, the ALJ must also fully apprise any vocational expert relied upon of those additional limitations. *See Crump*, 932 F.3d at 570. But this is not to suggest that any additional mental RFC limitations are required or that the cognitive functions already included in the RFC could not be supported. The Court concludes only that the ALJ was required to explain and support these determinations more clearly, and must do so on remand, so that a reviewing court is not "left to guess" in any subsequent appeal. *Hall*, 2020 WL 2507932, at *4.

### III.    Plaintiff's Remaining Arguments

Plaintiff's final challenge argues that the ALJ erred in assessing her subjective complaints by applying an "improper legal standard," failing to consider whether objective medical findings from and after January 2014 supported her claimed pain and limitations, and failing to evaluate fully her claims of negative medication side-effects and need to stay in bed

several days a week. (P's Brief at 18-23, ECF No. 13). As the case is being remanded for other reasons, it is unnecessary to consider these arguments in detail; it suffices to say that the ALJ should "take a fresh look" at these issues on remand along with the other evidence and issues discussed in this Opinion. *See Sikorski*, 690 F. App'x at 433 (declining to address "adverse-credibility finding," but suggesting ALJ "take a fresh look" at the issue on remand when reconsidering claimant's alleged bathroom needs). In so doing, the ALJ should also bear in mind that Plaintiff's care for her minor children (AR 1067) is an unreliable basis to discount her claims of pain and limitations, although there may well be other legitimate reasons for discounting them. *See Stage*, 812 F.3d at 1126 (ALJ improperly discounted claimant's alleged physical limitations based on ability to care for grandchildren) (citing Seventh Circuit decisions rejecting reliance on claimant's ability to care for self and children or other family, including *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.")); *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (same); *Beardsley*, 758 F.3d at 838 (same).[6]

Plaintiff also asks the Court to reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further

---

[6] To be clear, directing reconsideration of this and other issues relating to Plaintiff's subjective complaints is not intended to suggest that the ALJ's analysis of those claims was wholly flawed or lacking in support. Additionally, to the extent Plaintiff contends the ALJ's conclusion that her allegations were "not entirely consistent" with the record "constitutes reversible legal error" (P's Brief at 18-20, ECF No. 13), the Court notes that the Seventh Circuit continues to regard this phrasing as harmless "boilerplate," so long as the ALJ provides "legitimate reasons for discrediting the claimant's testimony." *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020); *Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020) ("even though the 'entirely consistent' language is boilerplate, the ALJ's recitation of it is harmless because he described (and applied) the correct standard of whether Harris's statements about her symptoms were substantiated by the objective medical evidence and other evidence in the record.") (citing 20 C.F.R. § 404.1529(c)). What matters is that the ALJ correctly considers "whether [Plaintiff's] statements about her symptoms were substantiated by the objective medical evidence and other evidence in the record," as the regulations require. *Harris*, 835 F. App'x at 886. The ALJ should simply make clear on remand that this standard has been applied.

proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, an award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. As explained throughout this Opinion, remand for further proceedings (not an award of benefits) is required in this case, as it is not clear on the current record that an award of benefits is required.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff against Defendant.

So ORDERED this 15th day of March, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT